# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY HARDING, | CASE NO. CV-F-04-5874 LJO |
| Plaintiff, | **DECISION ON SOCIAL SECURITY COMPLIANT** |
| vs. | (Docs. 15, 18, 19.) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Shirley Harding ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is not disabled and is ineligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by a November 4, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

1

**BACKGROUND**

2

**Plaintiff's Personal Background**

3   Plaintiff is age 56 and has a high school education and past relevant work as an in-home care

4   provider.  (AR 23, 64, 401, 402, 407, 413, 489.)

5

**Administrative Proceedings**

6

***Plaintiff's Prior SSI Application***

7   On August 12, 1998, plaintiff filed her prior SSI application (not at issue here) to allege disability

8   since July 7, 1997 based primarily on cervical and lumbosacral sprains/strains suffered during a rear end

9   automobile collision.  (AR 62, 68, 73, 172.)  With its September 10, 1998 Notice of Disapproved

10   Claims, the Social Security Administration ("SSA") denied plaintiff's claim and determined plaintiff's

11   "condition is not severe enough to be considered disabling."  (AR 46.)

12   On September 18, 1998, plaintiff filed her Request for Reconsideration to claim she is disabled

13   and cannot work. (AR 50.)  With its October 13, 1998 Notice of Reconsideration, SSA denied plaintiff's

14   claim and again determined that her "condition is not severe enough to be considered disabling."  (AR

15   51.)

16   On December 14, 1998, plaintiff filed her Request for Hearing by Administrative Law Judge to

17   claim that her tail bone, neck and back hurt "a lot" and that she has asthma "real bad."  (AR 55.)  After

18   an August 4, 1999 hearing, an ALJ issued his September 15, 1999 decision to find plaintiff disabled

19   since December 21, 1998.  (AR 176.)

20   On October 18, 1999, SSA requested its Appeals Council the review the ALJ's decision on

21   grounds that plaintiff's "claim is not supported."  (AR 180-181.)  On November 4, 1999, the Appeals

22   Council determined the ALJ's action, findings or conclusions "are not supported by substantial

23   evidence" and on March 4, 2000, remanded plaintiff's case to an ALJ "for further proceedings, including

24   a new decision."  (AR 183-187.)  After a July 28, 2000, supplemental hearing, an ALJ issued his August

25   23, 2000 decision to conclude plaintiff is not disabled and is not prevented to perform her past relevant

26   work as an in-home care provider.  (AR 361.)

27   Plaintiff submitted to SSA's Appeals Council her November 20, 2000 Request for Review of

28   Hearing Decision/Order to claim she is disabled and that the ALJ's decision is "inconsistent." (AR 376.)

1   On June 2, 2001, the Appeals Council denied plaintiff's request for review to render the ALJ's August

2   23, 2000 decision as the Commissioner's final determination on her original SSI application.[1]

3   ***Plaintiff's Current SSI Application***

4   On April 11, 2001, plaintiff filed her SSI application at issue here to claim disability since July

5   31, 1997 based on tail bone, back and neck injuries suffered during her July 1997 rear end automobile

6   collision along with leg and knee problems.  (AR 396, 401.)  With its September 25, 2001 Notice of

7   Disapproved Claims, SSA denied plaintiff's claim and determined that plaintiff's condition is not severe

8   to prevent her to work.  (AR 382.)

9   On October 17, 2001, counsel was appointed for plaintiff.  (AR 34.)  On November 7, 2001,

10  plaintiff filed her Request for Reconsideration to claim she is unable to perform substantial gainful

11  activity.  (AR 386.)  With its September 24, 2002 Notice of Reconsideration, SSA denied plaintiff's

12  claim and again determined plaintiff's condition is not severe enough to prevent her to work.  (AR 387.)

13  On October 7, 2002, plaintiff filed her Request for Hearing by Administrative Law Judge to

14  claim she is totally disabled.  (AR 391.)  After a June 19, 2003 hearing, the ALJ issued her August 14,

15  2003 decision to conclude plaintiff is not disabled and has the residual functional capacity to perform

16  a wide range of light work.  (AR 27-28.)  As to the ultimate unfavorable decision on plaintiff's prior SSI

17  application, the ALJ noted it creates "an ongoing presumption that the claimant continues to be 'not

18  disabled,' which may be overcome by new evidence that the claimant's condition has worsened (AR 97-

19  4(9); *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  After reviewing the record and testimony, the

20  Administrative Law Judge finds that new evidence does not establish that the claimant's condition has

21  substantially worsened since August 23, 2000."  (AR 23.)

22  Plaintiff submitted to SSA's Appeals Council her August 29, 2003 Request for Review of

23  Hearing Decision to seek the Appeals Council's review of the ALJ's decision.  (AR 17.)  On April 26,

24  2004, the Appeals Council denied plaintiff's request to render the ALJ's August 14, 2003 decision as

25  the Commissioner's final determination subject to this Court's review.  (AR 11.)

26

27      [1]     In the August 14, 2003 ALJ decision at issue here, the ALJ noted that the Appeals Council's June 2, 2001
    determination "constitutes an ultimate finding on the claimant's non-disability through August 23, 2000 (Exhibit C-2B).  The
    Appeals Council's decision is binding unless reversed by court action (20 CFR 404.981).  Under the doctrine of res judicata,

28  in the current case the Administrative Law Judge will not consider a disability onset date before August 23, 2000."

1

2                                    **Medical History And Records Review**[2]

3                                    ***Ken Peters, M.D., Treating Physician***

4          Following her automobile collision, plaintiff treated with Ken Peters, M.D. ("Dr. Peters"), and

5   in the late summer of 1997 complained of tail bone and back pain.  (AR 94, 96.)  September 29, 1997

6   x-rays revealed a normal lumbar spine, sacrum and coccyx.  (AR 100.)  On August 27, 1997, Dr. Peters

7   diagnosed neck and C-1 strain.  (AR 280.)

8          On August 27, 1997, Dr. Peters completed a Medical Report form to note that plaintiff

9   experienced multiple sprains and pain to her tail bone, neck and arm as a result of her automobile

10  collision. (AR 315.)  Dr. Peters noted that plaintiff was not hospitalized and was prescribed Motrin 600

11  mg to address her symptoms.  (AR 315.)  As to prognosis, Dr. Peters noted "good, doubt permanent

12  disability." (AR 315.)  Dr. Peters found plaintiff disabled from July 8, 1997 to October 1, 1997. (AR

13  315.)

14         September 29, 1997 lumbar spine and sacrum x-rays were normal with "no evidence of acute

15  traumatic or other significant pathology." (AR 333.)  On September 29, 1997, Dr. Peters completed

16  another Medical Report form to note that plaintiff experiences multiple sprains and pain in her tail bone

17  neck and arm as a result of her automobile collision. (AR 316.)  Dr. Peters noted that plaintiff had not

18  been hospitalized and complained of tail bone pain. (AR 316.)  Dr. Peters noted his diagnosis of neck

19  and low back strain and prescriptions of Motrin 600 mg and chiropractic treatment.  (AR 316.)  Dr.

20  Peters' further noted his "fair" prognosis and indicated plaintiff can return to work December 1, 1997.

21  (AR 316.)

22         On August 18, 1998, plaintiff complained of headaches and back pain.  (AR 247.)  Dr. Peters

23  diagnosed lumbosacral strain.  (AR 247.)  August 19, 1998 spine x-rays revealed degenerative changes

24  of the cervical spine and which are moderate at C4-5 and to a lesser degree at C5 and C6.  (AR 99, 331,

25  334.)  Plaintiff's bilateral hip x-rays were negative.  (AR 99, 331, 334.)  Plaintiff's left foot x-rays were

26  normal.  (AR 332.)  Dr. Peters had prescribed Tylenol #3 and Ibuprofen.  (AR 104.)  On October 5,

27
_____

28      [2]      The Commissioner stipulates that the ALJ fairly and accurately summarized the medical evidence in her
    August 14, 2003 decision.

1  1998, plaintiff complained of neck and lower back pain.  (AR 243.)

2      Dr. Peters completed a February 5, 1999 Medical Assessment of Ability to Do Work-Related

3  Activities (Physical) to note plaintiff is limited to: (1) lift/carry five pounds occasionally due to

4  "tenderness over lower back and tailbone"; (2) stand/walk two hours in an eight-hour day and 15 minutes

5  without interruption due to "neck and back tenderness"; and (3) sit three hours in an eight-hour day and

6  one hour without interruption.  (AR 232, 236.)  Dr. Peters noted that plaintiff is unable to climb, kneel,

7  crouch, stoop or crawl due to "tenderness of sacrum lilliac" and that plaintiff's reaching and push/pulling

8  are "limited by neck pain."  (AR 233, 237.)  Dr. Peters further noted that plaintiff's housekeeping and

9  personal care are "impaired by limited lifting."  (AR 234, 238.)  On November 13, 1999, plaintiff

10  complained of asthma and back pain.  (AR 241.)

### Bill Cairns, D.C., Treating Chiropractor

12      Following her automobile collision, plaintiff also treated with Bill Cairns, D.C. ("Mr. Cairns"),

13  a chiropractor.  Progress notes during July 1997 to March 1998 note plaintiff's improvement and feeling

14  better.  (AR 126-129, 134, 137-141, 143, 144.)

### Kurt V. Miller, Consultative Neurologist

16      Kurt V. Miller, M.D. ("Dr. Miller"), a neurologist, conducted a consultative examination of

17  plaintiff in connection with her automobile collision and prepared a May 4, 1998 report.  (AR 103, 261.)

18  Dr. Miller explained:

19      Her x-rays demonstrate an essentially normal lumbar spine and physical examination in
       this area is unremarkable.  Her x-rays do show premature arthritic changes of both hips
20     however.  Her complaints are rather good match for this condition. . . . Given her
       description of pain and the x-ray findings, bilateral hip arthritis strikes me as the most
21     probable cause of her "low back" complaints.  (AR 115, 273.)

22  Dr. Miller diagnosed premature degenerative joint disease of the hips bilaterally and chronic neck pain

23  transiently exacerbated in the subject automobile collision.  (AR 117, 275.)

### Troy Smith, Consultative Orthopedic Surgeon

25      Troy Smith, M.D. ("Dr. Smith"), a board certified orthopedic surgeon, conducted a consultative

26  examination and prepared a May 11, 2000 report.  (AR 218.) Plaintiff's chief complaint was lower back

27  pain and she explained that she had experienced lower back pain since her July 1997 automobile

28  collision and which has worsened although "she has had no specific treatment for her back other than

1  some symptomatic medications." (AR 218.)  Dr. Smith's examination revealed moderate tenderness

2  to percussion over the lumbosacral area of plaintiff's spine and mild tenderness to palpation over the

3  sciatic notch bilaterally. (AR 220.)  Dr. Smith's impression was unresolved lumbosacral strain and he

4  explained:

5      The patient should avoid activities which require repeated bending, lifting over 10
       pounds at one time.  She will have to avoid sitting for over half-hour at a time or standing
6      for over half-hour at one time.  She will have to avoid carrying over 10 pounds for any
       distance, otherwise, she has no orthopedic limitations.  (AR 222.)
7

8                    *Benjamin Chang, M.D., Consultative Orthopedist*

9      Benjamin Chang, M.D. ("Dr. Chang"), is board certified in physical medicine and rehabilitation

10  and conducted a July 28, 2001 consultative orthopedic examination.  (AR 434.)  Plaintiff chiefly

11  complained of back and neck pain and explained she had been a rear seat passenger at the time of her

12  July 1997 rear end automobile collision.  (AR 434.)  Dr. Chang's physical examination revealed "mild

13  tenderness on deep palpation over the lower lumbar spine as well as posterior paracervical muscles.

14  There is no spasm, crepitus, effusion, or deformities." (AR 436.)  Straight leg raising was negative.  (AR

15  436.)  Dr. Chang's neurological examination revealed plaintiff's "[m]otor strength is grossly 5/5 in both

16  the upper and lower extremities.  She has normal muscle bulk and tone with no evidence of muscle

17  atrophy." (AR 436.)  Dr. Chang diagnosed "chronic neck and back pain, likely from muscle strain and

18  possible osteoarthritis" and assessed:

19      There are no limitations of standing, walking, or sitting continuously.  There is no need
       for assistive devices.
20
       The claimant should be able to lift and carry 20 pounds frequently and 50 pounds
21      occasionally.

22      Postural limitations include occasional bending, stooping, crouching, crawling, pushing,
       and pulling.  There are no other manipulative limitations.  (AR 436.)
23

24                    *Physical Residual Functional Capacity Assessments*

25      Sadda Reddy, M.D. ("Dr. Reddy"), completed an August 27, 2001 Physical Residual Functional

26  Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 25 pounds frequently and 50 pounds

27  occasionally; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-

28  hour workday; (4) push/pull subject to the lift/carry limitations; (5) frequently balance; and (6)

                                          6

1 occasionally climb, stoop, kneel, crouch and crawl.  (AR 439.)  Dr. Reddy found neither manipulative,

2 visual, communicative nor environmental limitations, except limited far visual acuity.  (AR 440-441.)

3 Dr. Reddy noted that the medical record lacks evidence of ongoing neck and back pain treatment, that

4 great weight is given to Dr. Chang's examination findings as they are the only recent comprehensive

5 examination on record, and that a medium residual functional capacity with postural limitations is

6 consistent with Dr. Chang's examination and findings.  (AR 443.)  Medical consultant Ted Wilson

7 agreed with Dr. Reddy's assessment.  (AR 447.)

8        Brian Ginsberg, M.D. ("Dr. Ginsberg"), completed a September 23, 2002 Physical Residual

9 Functional Capacity Assessment to conclude that plaintiff is able to: (1) lift/carry 25 pounds frequently

10 and 50 pounds occasionally; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six

11 hours in an eight-hour workday; (4) push/pull subject to the lift/carry limitations; (5) occasionally climb

12 ramp/stairs, stoop, kneel, crouch and crawl; and (6) frequently balance.  (AR 454, 455.)  Dr. Ginsberg

13 found that plaintiff had neither manipulative, visual, communicative nor environmental limitations,

14 except limited far acuity and avoidance of working environments with atmospheric conditions to

15 aggravate asthma.  (AR 456, 457.)  Dr. Ginsberg agreed with a medium residual functional capacity with

16 postural and environmental restrictions due to asthma.  (AR 462.)

17                              *Sierra Kings District Hospital*

18        In October 2001, plaintiff presented to the Sierra Kings District Hospital emergency room and

19 complained of cervical pain.  (AR 452.)  Plaintiff noted her failure to take medications and noted no

20 current treatment.  (AR 452.)  Plaintiff was prescribed medication and directed to restrict activity until

21 her symptoms improved.  (AR 452.)

22              *United Health Centers/Cecilia Galindo, M.D., Treating Internist*

23        Plaintiff treated at United Health Centers, and November 19, 2001 notes of Rodrigo De Zubiria,

24 M.D., note that plaintiff has never been hospitalized and had "multiple disconnected complaints

25 involved in SS [Social Security] Administration."  (AR 480.)  In December 2001 and January 2002,

26 plaintiff treated primarily for asthma management.  (AR 477-479.)  On April 11, 2002, plaintiff was "in

27 for cholesterol education," and notes state she "has not been following a diet."  (AR 475.)  On June 27,

28 2002, plaintiff complained of hip pain.  (AR 474.)  July 11, 2002 notes reflect that lower back pain is

1    improving.  (AR 473.)

2         August 2, 2002 notes of Cecilia Galindo, M.D. ("Dr. Galindo"), an internist, reflect that Celebrex

3    helped plaintiff's hip and back pain.  (AR 472.)  Dr. Galindo diagnosed back/neck pain – chronic and

4    continued Celebrex.  (AR 472.)  On August 23, 2002, Dr. Galindo noted plaintiff's noncompliance with

5    her medication regimen, including not taking medication was recommended.  (AR 471.)  Dr. Galindo's

6    October 4, 2002 notes reflect that Vioxx 12.5 mg "has been helping" and that plaintiff "has been

7    exercising – 'walk a stair.'"  (AR 470.)  On November 15, 2002, plaintiff complained of right

8    sacral/buttock pain with out trauma and for which she takes Vioxx 12.5 mg.  (AR 469.)  On February

9    14, 2003, Dr. Galindo treated primarily plaintiff's asthma.  (AR 467.)  On May 8, 2003, plaintiff

10   complained of foot pain and was assessed with plantar fascitis, moderate, and her Vioxx was increased

11   to 50 mg for a week.  (AR 465, 466.)  Dr. Galindo's May 19, 2003 notes reflect that plaintiff "needs

12   form filled out for her lawyer" and that she "is trying to settle" SSI.  (AR 466.)  Dr. Galindo attributes

13   plaintiff as saying plaintiff can lift up to five to ten pounds and "feels pulling sensation in neck and

14   back."  (AR 466.)  Dr. Galindo noted that Vioxx decreased plaintiff's back and neck pain and recorded

15   plaintiff's complaints.  (AR 464.)  Dr. Galindo's examination revealed: (1) tenderness to palpitation to

16   plaintiff's upper neck near base of head with decreased range of motion when looking to left; (2)

17   decreased back range of motion; (3) ability to walk on heels and toes with pain complaints; and (4)

18   normal hip range of motion with complaint of pulling sensation in back.  (AR 464.)  Dr. Galindo

19   assessed neck, back and hip pain – chronic and continued Vioxx.  (AR 464.)

20        Dr. Galindo completed a May 19, 2003 questionnaire to note that she believes plaintiff is unable

21   to perform any full-time work, including sedentary work and that plaintiff's primary impairments are

22   neck, back and hip pain.  (AR 481.)  Dr. Galindo based her assessment on plaintiff's pain when bending

23   and pulling sensation in her back when she moves her hips.  (AR 481.)  Dr. Galindo assessed plaintiff

24   is limited to sitting ten minutes, standing/walking up to 15 minutes, sitting three to four hours in an

25   eight-hour period, and standing/walking three to four hours in an eight-hour period.  (AR 481.)  Dr.

26   Galindo noted that plaintiff must lie down or elevate her legs every 15-20 minutes and that plaintiff has

27   been disabled to such degree since 1997.  (AR 481.)

28   / / /

*Medications*

Plaintiff's medications have included aspirin, Vanceril, Benadryl, Sufedrin, Vancenase, Lipitor 20 mg, Vioxx 12.5 mg, Hyzoar 12.5 mg, Cimctidone 400 mg, Singulair 10 mg, Diphenhydrmone 25 mg, Zyrtec 10 mg, Zoloft 5 mg, Proventil and Azmcort inhalers, and Albuterol. (AR 89, 195, 196, 218, 406, 433.)

**Plaintiff's Activities And Testimony**

*Plaintiff's Reports And Questionnaires*

Plaintiff completed an April 9, 2001 Disability Report Adult to note that in her July 1997 automobile collision, she hurt her tail bone, back and neck and has leg and knee trouble. (AR 401.) Plaintiff is unable to lift/carry more than ten pounds and avoids sitting or standing for half an hour at time. (AR 401.) Plaintiff tried to work shortly after her July 1997 automobile collision but was unable to continue in that she could not stand, lift or clean. (AR 401.)

Plaintiff completed an October 17, 2001 Reconsideration Disability Report to claim she experienced increased right hip pain and difficulty "to get around" and in "almost everything I do because of pain." (AR 421.) Plaintiff is able to care for her needs but requires twice the time to do so. (AR 423.)

Plaintiff completed an April 17, 2002 Reconsideration Disability Report to note she experienced increased pain, headaches, and difficulty breathing, walking standing and sitting. (AR 425.) Plaintiff is able to care for her personal needs. (AR 427.)

*Plaintiff's Hearing Testimony*

Plaintiff testified at the June 19, 2003 ALJ hearing that she lives with her husband and adult son. (AR 488.) Plaintiff has a high school education and a certificate regarding care for the elderly. (AR 489.) Plaintiff has a driver's licence and drives three days a week to the store. (AR 490.) Plaintiff stopped working after her July 1997 rear end automobile collision. (AR 490.)

Plaintiff believes she is unable to perform full-time work because her hip and neck constantly hurt and she has asthma, allergies and panic/anxiety attacks. (AR 491.) Plaintiff's neck pain starts as dull and goes to "a high pitched pain" up her neck to require her to lie down. (AR 492.) Plaintiff uses inhalers for her coughing and wheezing and medicine for her panic and anxiety. (AR 492.) Plaintiff

9

1  "constantly" becomes nervous to interfere with her concentration which is limited to "not even an hour."

2  (AR 492-493.)

3        Plaintiff has high blood pressure and her legs and knees swell.  (AR 494.)  Pain shoots down

4  from her spine "constantly" to her neck and back.  (AR 494.)  The pain interferes with plaintiff standing

5  to which she is limited to 15-20 minutes.  (AR 495.)  Plaintiff is able to sit for about 15 minutes before

6  needing to get up and down.  (AR 495.)  A heel spur produces pain which plaintiff started to experience

7  a month or two prior to the hearing.  (AR 495, 499.)

8        Plaintiff's doctor told plaintiff to use a heating pad and ice packs and to take her pain

9  medications.  (AR496, 497.)  Medication helps a "little" if plaintiff takes it correctly.  (AR 496.)

10  Plaintiff's medication produces no side effects.  (AR 496.)  Plaintiff uses heat and ice packs "almost

11  every day" three or four times.  (AR 497.)  Plaintiff props up her feet and rests "for a while."  (AR 497.)

12  During an eight-hour day, plaintiff rests three or four hours because she has "to rest the heel" and sits

13  "about only two hours."  (AR 498.)  Plaintiff's "spine back" pulls when she lifts.  (AR 498.)  Plaintiff

14  estimates she is able to lift up to five pounds.  (AR 499.)  Plaintiff requires help to lift ten pounds.  (AR

15  499.)  Physical therapy helped only a "tiny bit."  (AR 500.)

16        Plaintiff tries to vacuum.  (AR 501.)  She does dishes, dusts and shops.  (AR 502.)  Plaintiff

17  cooks and does laundry with the assistance of her husband and son.  (AR 502.)

18        Plaintiff believes she would have problem with a job where she could get up and move around

19  because of her "coughing and breathing troubles and stuff.  And I get tired, and I get headaches, and then

20  I've got a swollen head.  Whenever I have real bad problems with my body I get this swollen head."

21  (AR 503.)  Plaintiff takes medication for anxiety.  (AR 504.)  Plaintiff becomes "real frustrated, real

22  nervous," is unable to concentrate, gets headaches and needs to sit down, rest and relax.  (AR 504.)

23  Plaintiff experiences anxiety everyday.  (AR 506.)

24                              **The ALJ's Findings**

25        With her August 14, 2003 decision, the ALJ identified the "primary issues" as whether plaintiff

26  is under a disability as defined in the Act.  (AR 22.)  In determining plaintiff is not disabled and is

27  ineligible for SSI, the ALJ found:

28        1.        Plaintiff has degenerative disc disease of the cervical spine, chronic lumbar sprain and

1    asthma which are severe but do not meet or medically equal an impairment in the Listing

2    of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

3    2.    Plaintiff's allegations regarding her limitations are not totally credible.

4    3.    Plaintiff has the residual functional capacity to lift occasionally up to 50 pounds, to lift

5          and carry frequently up to 25 pounds, to sit, stand or walk six hours in an eight-hour day,

6          and to crouch, stoop, crawl, kneel or climb stairs occasionally.  Plaintiff must avoid

7          concentrated exposure to pulmonary irritants.

8    4.    Plaintiff is unable to perform her past relevant work as a care provider.

9    5.    Plaintiff has the residual functional capacity to perform a wide range of light work.

10   6.    Based on an exertional capacity for light work and plaintiff's age, education and work

11         experience, Rule 202.14 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404,

12         Subpart P, Appendix 2 ("Medical-Vocational Guidelines"), directs a conclusion of not

13         disabled.

14   7.    Plaintiff's capacity for light work has not been substantially compromised by her

15         nonexertional limitations.  (AR 27-28.)

16                                            **DISCUSSION**

17                                      **Standard of Review**

18         Congress has provided limited judicial review of a Commissioner's decision made through an

19   ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ,

20   when the determination is not based on legal error and is supported by substantial evidence.  *See Jones*

21   *v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812

22   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

23   contrary to treating physician's findings).[3]  Substantial evidence is "more than a mere scintilla,"

24   *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

25   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such

26

27         [3]    "The district court properly affirms the Commissioner's decision denying benefits if it is supported by
     substantial evidence and based on the application of correct legal standards."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th
28   Cir. 1997).

                                                  11

1   evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

2   at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

3   　　　　The record as a whole must be considered, weighing both the evidence that supports and detracts

4   from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

5   substantial evidence to support the administrative finding, or if there is conflicting evidence that will

6   support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

7   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than

8   one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

9   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

10  Cir. 1999).

11  　　　　This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

12  is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

13  whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that

14  she is disabled which requires presentation of "complete and detailed objective medical reports of her

15  condition from licensed medical professionals."  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

16  (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for

17  errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

18  　　　　Here, plaintiff claims disability since July 31, 1997 based on tail bone, back and neck injuries

19  suffered during her July 1997 rear end automobile collision along with leg and knee problems.  (AR 396,

20  401.)  As discussed below, this Court finds that the ALJ properly evaluated the evidence and that her

21  conclusion that the plaintiff is not disabled is based on proper legal standards and substantial evidence.

                                    **Evaluation Of Treating Physicians**

23  　　　　Plaintiff claims that the ALJ "did not properly consider the treating physician opinions" and that

24  Dr. Galindo and Dr. Peters "issued firm opinions supporting disability."  The Commissioner argues that

25  the ALJ properly rejected Dr. Galindo's opinion in that it "was contradicted by other medical opinions,

26  was unsupported by clinical findings, and was based on Plaintiff's subjective complaints which the ALJ

27  properly discounted."  The Commissioner contends that the ALJ properly relied on Dr. Chang's opinion.

28  　　　　A treating physician's opinion is not conclusive as to a claimant's physical condition or the

1  ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

2  *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747,

3  751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[4]  An ALJ may reject a

4  treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in

5  form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751.

6  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

7  specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.

8          The Ninth Circuit has further explained:

9              To reject the opinion of a treating physician which conflicts with that of an
10  examining physician, the ALJ must "'make findings setting forth specific, legitimate
     reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ
11  can meet this burden by setting out a detailed and thorough summary of the facts and
     conflicting clinical evidence, stating his interpretation thereof, and making findings." .
12  . . The rule . . . does not apply, however, "when the nontreating physician relies on
     independent clinical findings that differ from the findings of the treating physician." . .
13  . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical
     tests, it must be viewed as substantial evidence . . .'"

14  *Magallanes*, 881 F.2d at 751(citations omitted.)

15          An ALJ may reject a treating physician's report based on a claimant's exaggerated claims.  *See,*

16  *e.g., Sandgathe*, 108 F.3d at 980.  A physician's opinion of disability "premised to a large extent upon

17  claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints

18  have been "properly discounted."  *Fair v. Bowen*, 885 F.2d 597, 605 (citing *Brawner v. Sec. of Health*

19  *& Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

20  1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link

21  between [claimant's] complaints and known medical pathologies").

22          "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

23  testimony, and for resolving ambiguities."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

24  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

25  specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.

26

27      [4]    A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an
     administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  The Commissioner has final responsibility
28  to determine a claimant's residual functional capacity.  20 C.F.R. § 404.1546.

13

1          After summarizing the medical evidence, the ALJ explained her rationale to discount Dr.

2    Galindo's assessment:

3          In evaluating the medical evidence, the Administrative Law Judge accords very
           substantial weight to the July 2001 consultative orthopedic evaluation and to the
4          examiner's conclusion that the claimant could lift 20-50 pounds, sit, stand, or walk
           without limitations, and had postural restrictions on stooping and crouching.  The
5          claimant's history of asthma makes it reasonable to limit her exposure to pulmonary
           irritants.  The state agency analyst and reviewing medical consultant are in agreement
6          that the claimant's medium exertional capacity is reduced to light because of non-
           exertional limitations (Exhibits C-2A; C 5-F).
7
           No weight is given to Dr. Galindo's May 2003 evaluation, showing the claimant limited
8          to a narrow range of sedentary exertion since 1997 (Exhibit C-8F).  It is not supported
           by objective findings, or even a diagnosis, apart from pain complaints.  It is based
9          uncritically on the claimant's allegations, has been supplied as an accommodation, and
           is not an impartial assessment of the claimant's functional capacity.  Further, Dr. Galindo
10         had no knowledge of the claimant's condition before November 2001; her willingness
           to "backdate" the claimant's limitations supports the conclusion that the evaluation is not
11         credible.  (AR 25.)

12         The ALJ properly rejected Dr. Galindo's assessment in the absence of clinical findings to support

13   it.  Dr. Galindo's assessment was based on plaintiff's exaggerated claims, which the ALJ properly

14   discredited.  (AR 26.)  Dr. Galindo based her assessment on plaintiff's complaints of neck, back and hip

15   pain and noted that plaintiff had been disabled since 1997, five years before Dr. Galindo started to treat

16   plaintiff.  (AR 481.)  Particularly troubling is Dr. Galindo's broad assessment given her limited treatment

17   of plaintiff and deference to plaintiff's past complaints which Dr. Galindo dutifully noted along with the

18   fact that plaintiff "is trying to settle" SSI.  (AR 464-466.)   Moreover, Dr. Galindo's notes fail to support

19   her far reaching assessment.  Dr. Galindo noted plaintiff's noncompliance with her medication regimen

20   and that Vioxx helped.  (AR 464, 470, 471.)  Dr. Galindo's conservative treatment eviscerates her

21   overreaching assessment.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative

22   treatment" suggests "a lower level of both pain and functional limitation.")

23         The ALJ properly relied on Dr. Chang's opinion that plaintiff is not limited in standing, walking

24   or sitting continuously and is able to lift/carry 20 pounds frequently and 50 pounds occasionally.  (AR

25   436.)  The ALJ properly applied Dr. Chang's assessment and postural limitations to the realm of light

26   work. Reports of consultative physicians, like Dr. Chang, "may serve as substantial evidence." *Andrews*

27   *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ appropriately relied on Dr. Reddy and Dr.

28   Ginsberg's assessments which are substantial evidence in that they are supported by evidence in the

1  record (Dr. Chang's opinion) and consistent with it.  *See Morgan v. Commissioner of Social Security*

2  *Admin.*, 169 F.3d 595, 600 (9ᵗʰ Cir. 1990.)

3      Plaintiff claims that Dr. Peters' February 5, 1999 check-off form supports Dr. Galindo's

4  assessment.  As noted by the Commissioner, Dr. Peter's opinion was properly discounted by the August

5  23, 2000 ALJ decision wherein the ALJ noted:

6      Dr. Peters' very restrictive statements appear to be an accommodation in an attempt to
       help the claimant as he did not state this in his brief treatment notes.  His opinions are
7      rejected because they are inconsistent with the weight of the evidence.  Furthermore, they
       are not well-supported by medially acceptable clinical and laboratory diagnostic
8      techniques.  (AR 358.)

9  The August 23, 2000 ALJ decision is res judicata, and evaluation of Dr. Peters' opinion is not properly

10 before this Court.  "The principles of res judicata apply to administrative decisions."  *Chavez v. Bowen*,

11 844 F.2d 691, 693 (9ᵗʰ Cir. 1988).⁵  Similar analysis applies to plaintiff's comments regarding Dr.

12 Smith's May 11, 2000 assessment which is properly discounted in the August 23, 2000 ALJ decision,

13 as "contradicted by the substantial evidence of the record."  (AR 359.)

14                          **Consistent, Supported Findings**

15     Plaintiff complains that the ALJ's findings "are inconsistent or not supported."  The

16 Commissioner disagrees.

17     Plaintiff asserts that the ALJ inconsistently found that plaintiff has a medium residual functional

18 capacity but used a light Medical-Vocational Guideline.  The ALJ specifically explained: "Although the

19 claimant's exertional capacity would be considered in the medium range, her non-exertional limitations

20 effectively reduce it to light."  (AR 23.)  Plaintiff fails to raise a meaningful inconsistency.

21     Plaintiff further asserts the ALJ incorrectly applied *Chavez* without reviewing prior records.  For

22 a claimant "to overcome the presumption of continuing nondisability arising from the first administrative

23 law judge's findings of nondisability, [the claimant] must prove 'changed circumstances' indicating a

24 greater disability."  *Chavez*, 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9ᵗʰ Cir. 1985)).

25 The ALJ reviewed the medical evidence and substantially supported her determination "that new

26 evidence does not establish that the claimant's condition as substantially worsened since August 23,

27 ────────────────

28    ⁵    Dr. Peters earlier notes contradict his assessment in that during the fall 1997, Dr. Peters concluded plaintiff
      could return to work and doubted permanent disability.  (AR 315, 316.)

                                    15

1   2000." (AR 23.) Plaintiff's change in age status of 50-54 (closely approaching advanced age) to 55-60

2   (advanced age) is immaterial in that at the time of the ALJ's August 14, 2003 decision, plaintiff had not

3   reached age 55 which may be relevant if she subsequently applies for SSI. Plaintiff fails to substantiate

4   that the ALJ's findings are inconsistent or unsupported.

5                                **CONCLUSION AND ORDER**

6          For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

7   properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported

8   by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

9   Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to

10  remand for further proceedings.  This Court DIRECTS the Court's clerk to enter judgment in favor of

11  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Shirley Harding

12  and to close this action.

13         IT IS SO ORDERED.

14  **Dated:    August 28, 2005                        /s/ Lawrence J. O'Neill**
        66h44d                              UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28